[Cite as *State v. Wallace*, 2013-Ohio-4826.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                    :

    Plaintiff-Appellee          :        C.A. CASE NO.    25670

v.                              :        T.C. NO.    12CR3369

MAURICE WALLACE               :       (Criminal appeal from
                                  Common Pleas Court)
    Defendant-Appellant         :

                                         :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____1st____ day of _____November_____, 2013.

. . . . . . . . . .

CARLEY J. INGRAM, Atty. Reg. No. 0020084, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

ELIZABETH SCOTT, Atty. Reg. No. 0076045, The Liberty Tower, Suite 603, 120 W. Second Street, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

MAURICE WALLACE, #A677-618, London Correctional Institute, P. O. Box 69, London, Ohio 43140
      Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}    This matter is before the Court on the Notice of Appeal of Maurice Wallace,

filed by appellate counsel on March 7, 2013, pursuant to *Anders v. California,* 386 U.S. 738,

87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Wallace appeals from his conviction on one count of domestic violence, following a jury trial. This Court advised Wallace that a brief had been filed herein asserting an inability to find any meritorious claim to present for review, and Wallace was granted 60 days to file a pro se brief asserting any errors for this Court's analysis. On September 4, 2013, Wallace requested an extension of time to file a brief, which this Court granted in part. Wallace did not file a brief within this Court's deadline.

{¶ 2} Wallace was initially indicted on November 19, 2012, on one count of domestic violence, in violation of R.C. 2919.25(A), and the indictment provided that he was previously convicted of domestic violence. On December 31, 2012, Wallace was re-indicted on one count of domestic violence, in violation of R.C. 2919.25(A), and his indictment provides that he has two prior domestic violence convictions. Following a jury trial, Wallace was found guilty of domestic violence, a felony of the third degree, and the trial court imposed a 36-month sentence.

{¶ 3} Appellate counsel asserted two potential assignments of error herein which we will consider together. They are as follows:

"MR. WALLACE'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE,"

And,

"THE EVIDENCE PRESENTED BY THE STATE WAS INSUFFICIENT TO CONVICT MR. WALLACE."

{¶ 4} This Court previously noted, in *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 7-8:

We are charged by *Anders* to determine whether any issues involving

potentially reversible error that are raised by appellate counsel or by a defendant in his pro se brief are "wholly frivolous." * * * If we find that any issue presented or which an independent analysis reveals is not wholly frivolous, we must appoint different appellate counsel to represent the defendant. * * *

*Anders* equates a frivolous appeal with one that presents issues lacking in arguable merit. An issue does not lack arguable merit merely because the prosecution can be expected to present a strong argument in reply, or because it is uncertain whether a defendant will ultimately prevail on that issue on appeal. An issue lacks arguable merit if, on the facts and law involved, no responsible contention can be made that it offers a basis for reversal. * * *

{¶ 5} As this Court has noted:

"A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight*, 107 Ohio St.3d 101,112, 2005-Ohio-6046, 837 N.E.2d 315. "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' (Internal citations omitted). A claim that a jury verdict is against the manifest weight of the evidence involves a different test. 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in

resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.* (Internal citations omitted).

The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510 (Oct. 24, 1997). *State v. Sims*, 2d Dist. Montgomery No. 24763, 2012-Ohio-3106, ¶ 8-10.

**{¶ 6}** R.C. 2919.25(A) provides that: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." "A person acts

knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). A family or household member is defined in part as "a person living as a spouse," which in turn is defined as "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender * * * ." R.C. 2919.25(F)(1)(a)(i);(2). Pursuant to R.C. 2919.25(D)(4), if an offender has previously been convicted of two or more domestic violence offenses, a violation of R.C. 2919.25(A) is a felony of the third degree.

{¶ 7} At trial, Vanessa Bowling testified that on November 9, 2012, she and Wallace resided together at 322 Ernst Avenue, at the home of Wallace's brother, Joseph Hiamilton and Hiamilton's four children. On that date, Bowling stated that she and Wallace, after purchasing "some drugs" and alcohol, returned to the Ernst Avenue address, and that she and Wallace drank beer outside in a car "for hours, like two hours." When they ran out of beer, according to Bowling, an argument ensued over money, and Wallace told Bowling to get out of the car. Bowling testified that once she did so, Wallace followed her and pulled her down "and was kicking me and punched me in my head" in the front yard of the home. She stated that Wallace was "bending over me" in the course of the attack, and that he "was punching me and he was kicking me," while she covered her face.

{¶ 8} When a neighbor came outside with his dog, Bowling stated that Wallace stopped attacking her, and that she went inside 322 Ernst Avenue. Bowling stated that Wallace followed her into the kitchen, and "he started punching me and kicking me

again." Specifically, she stated that she was on the floor and Wallace "punched me in my head and he was kicking me. He kicked me in my pelvic, which hurt it." She further stated that Wallace "rammed" her head into a nail in the wall "where we keep the potholders at." She stated that "the police ended up coming," having been called by Hiamilton. When the police arrived, Bowling stated that she "was a wreck," emotional and in pain. She identified photographs depicting her injuries that were taken by a responding officer.

{¶ 9}   Joseph Hiamilton testified that Bowling and Wallace resided together in his basement. He stated that on the date of the incident, his son advised him that Bowling and Vanessa were fighting in the front yard. Hiamilton stated that he observed the couple in the front yard, and that Wallace "was up top of her and she was on the ground," and that Wallace "was kicking." Hiamilton stated that he called 911 after Wallace and Bowling "brought it into my home."

{¶ 10}   Elizabeth Alley testified that she is employed as a City of Dayton Police Officer, and that she responded to Hiamilton's home on November 9, 2012. Alley stated that the door to the home was open, and that she and Officer Heber, who arrived at the same time she did, observed Wallace and Bowling "finishing up their fight * * * as we walked in." According to Alley, when "we first walked in, they were still in the kitchen area, like, that leads off of the living room, which is where we were in. And [Wallace] was very sweaty. He was still puffed up. It would appear that he had just gotten done fighting." Alley stated that Bowling "was crying. She was nearly in hysterics and you could tell she was hurt. She was visibly upset and crying, physically of course. Very, very upset." Alley stated that Bowling "couldn't even talk she was so upset when I first got there. We had to calm her down a little bit in order for her tell me what happened." Alley stated that Bowling

described the attack and "complained of pain on her left hand. She complained of groin pain. She complained of pain on her left shin. She complained of pain of the side of her neck as well." Alley stated that she observed injuries on Bowling, and that she photographed them. Alley identified the photographs taken by her.

{¶ 11} Stephon Daniels testified that he is employed by the Dayton Police Department as a detective, and that Bowling met him at the Safety Building and provided a verbal statement. He testified that at the time Bowling "stated she was feeling pain all over." Daniels stated that Bowling showed him "[m]ultiple contusions beneath the hair on the scalp. By 'contusions,' I mean bumps as if you got bumped in the head. I also noticed two bruised knows (sic) and a circular pattern on her scalp, but behind one of her ears." Daniels stated that Bowling's "knees appeared bruised." In the course of his investigation, Daniels stated that he learned that Wallace had two previous domestic violence convictions in Vandalia Municipal Court and Montgomery County, and he identified certified copies of the termination entries for both convictions.

{¶ 12} Finally, James Maupins testified that he is employed by the Montgomery County Common Pleas Court adult probation department. He identified a certified copy of the termination entry for Wallace's domestic violence conviction, dated May 29, 2009, and he stated that Wallace had been under his supervision based upon that conviction. Maupins also testified that he was aware that Wallace had a prior domestic violence conviction in Vandalia, and he identified a certified copy of the termination entry therefrom from 2005. He identified Wallace as the individual named in each termination entry.

{¶ 13} Pursuant to our responsibilities under *Anders*, we have independently examined the entire record and we conclude, as did appellate counsel, that there are no

arguably meritorious issues for review. The jury clearly found the testimony of the State's witnesses to be credible, and we defer to the jury's assessment of credibility. Regarding appellate counsel's potential assigned errors, we further conclude that the State's evidence establishes that Wallace's conviction for domestic violence, a felony of the third degree, is not against the manifest weight of the evidence and is supported by sufficient evidence, since Wallace, who was twice previously convicted of domestic violence, knowingly caused physical harm to Bowling, a household member. Since this appeal is wholly frivolous, Wallace's potential assigned errors are overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, P.J. and HALL, J., concur.

Copies mailed to:

Carley J. Ingram
Elizabeth Scott
Maurice Wallace
Hon. Barbara P. Gorman